UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIRSTIE MARIE MYRICK,

**Plaintiff,**

       v,

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:18-cv-1310-TPK

OPINION AND ORDER

## OPINION AND ORDER

      Plaintiff Kirstie Marie Myrick filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on September 18, 2018, denied Ms. Myrick's application for disability insurance benefits. Ms. Myrick has now moved for judgment on the pleadings (Doc. 7) and the Commissioner has filed a similar motion (Doc. 12) . For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I. BACKGROUND

      Plaintiff's application for disability insurance benefits was filed on August 18, 2013. She alleged that she became disabled on May 19, 2012, primarily due to severe back pain. She was 35 years old at the time her application was filed.

      After initial administrative denials of her claim, Plaintiff appeared and testified at an administrative hearing held on January 10, 2017. A second hearing was held on June 19, 2017. Plaintiff and a vocational expert, Mr. Steinbrenner, both testified at the second hearing.

      The Administrative Law Judge issued an unfavorable decision on August 21, 2017. He concluded that Plaintiff suffered from one severe impairment: degenerative disc disease of the neck, thoracic spine, and low back. According to the ALJ, this impairment limited Plaintiff, at least prior to the expiration of her insured status on December 31, 2015, to the performance of a reduced range of light work. She could occasionally climb ramps and stairs (but not ladders, ropes, or scaffolds) and could occasionally kneel, crouch, and crawl. She also could not engage in repetitive bending, carrying, pushing, and pulling, could not do overhead work, and needed to be able to change positions between sitting and standing at will.

Mr. Steinbrenner, the vocational expert, was asked about whether a person with that work capacity - excluding the sit/stand option - could do either Plaintiff's past work (which consisted of claims clerk, cashier checker (including stocking shelves), and dancer) or other jobs. He said that someone with those limitations could do either the claims clerk or cashier checker job, as the latter job is typically performed, and could also work as a small retail shop cashier (cashier II), as a cleaner/housekeeper, and a cafeteria attendant. If a sit/stand option were added, the person could still perform the claims clerk job and the cashier II job. Further, if the person were limited to only occasional reaching in all directions, he or she could be a school bus monitor, with 47,740 such jobs present in the national economy.

The ALJ concluded, based on this testimony, that Plaintiff was able to perform her past relevant work as a claims clerk, or, alternatively, could do the job of cashier II. Consequently, because Plaintiff could still perform substantial gainful activity, the ALJ found that she was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts that there are two separate reasons for reversing the ALJ's decision and remanding the case. She argues, first, that the ALJ erred by relying on the opinion from Dr. Donna Miller, who did not have the opportunity to review images of Plaintiff's neck and back. Second, she asserts that the ALJ erred by not recontacting Plaintiff's treating physician, Dr. Gullickson, who had expressed the opinion that Plaintiff could not work.

## II. THE KEY EVIDENCE

Plaintiff's statement of errors focuses on the opinions of two physicians - Dr. Miller, the consultative examiner, and Dr. Gullickson, the treating source. The Court will summarize the evidence as it relates to these two opinions, and will also provide a brief recapitulation of Plaintiff's testimony.

Plaintiff testified at the administrative hearings that she is a high school graduate with four semesters of college work as well. She injured herself while lifting weights at the gym. She stopped working in 2010 due to the combination of her back problems and her pregnancy. At that time, she was a claims clerk for GEICO Insurance Company. Previously, she had been employed as a dancer and as a grocery store cashier. She stocked shelves in that latter job.

At one time, back surgery had been recommended to treat Plaintiff's condition, but more recently her doctor had advised against it. She had undergone steroid injections in her lower back and believed they caused her to develop hip problems. Plaintiff had small children but she lived with relatives who helped with child care. She had been prescribed medication and therapy for anxiety but had refrained from taking the medication for various reasons.

Plaintiff testified that she had hip pain on both sitting and standing and that she occasionally had to use a cane. Additionally, she had constant mid-back pain and developed migraine headaches due to neck pain. The herniated disc in her low back was her worst problem.

She could sit anywhere from five to fifteen minutes at a time and could walk for fifteen minutes. She could also stand in place for fifteen to twenty minutes. She drove fifteen minutes to pick her son up from school when her pain level allowed her to do so. She did not lift more than five pounds. Plaintiff experienced difficulty reaching in front of her and turning her neck. Her pain affected her memory and concentration as well. Overall, she was unable to lead a normal life due to pain.

The medical records - in particular, those created prior to the expiration of Plaintiff's insured status on December 31, 2015 - show that in 2011 Plaintiff was already reporting low back pain with numbness. She was working then although she said her pain was constant and had not improved with an epidural injection. She had restrictions with pain on the range of motion of her lumbar spine. An MRI showed some small or minimal disc bulging at L3-S1, and a prior study had shown some disc herniation or degenerative changes at C6-7 as well as some small disc bulging throughout the thoracic spine. She underwent aquatic physical therapy, which improved her symptoms, but it was discontinued in 2012 due to her pregnancy. She developed left leg pain in 2013 and began aquatic physical therapy again in 2014. She did not want to undergo surgery at that time because she was pregnant again. She was given a prescription for hydrocodone by Dr. Gullickson, but advised to use it sparingly due to her pregnancy. Further imaging studies were recommended after Plaintiff had her baby.

In August, 2014, Plaintiff had another MRI done. It showed a more prominent disc bulge at L3-4 as well as some mild foraminal stenosis at that level. The other findings were similar to those shown on the 2011 MRI. At an office visit shortly thereafter, Plaintiff reported that her pain was severe but intermittent and was aggravated by sitting, standing, and walking. It also radiated into both legs and it limited her activities. When Dr. Gullickson performed Plaintiff's annual physical examination in October of that year, he recommended that she increase her exercise, and he renewed her handicapped parking pass due to her degenerative disc disease and low back pain.

Plaintiff continued to receive treatment for those conditions throughout the remainder of 2014 as well as throughout 2015. She did not report any improvement in her condition. In a note dated July 27, 2015, Dr. Gullickson stated that "[t]o a reasonable degree of medical certainty, she will not be able to return to work within the next year." (Tr. 656). She also saw a spine specialist in 2015 who diagnosed her with chronic pain syndrome, lumbar focal disc herniation, chronic low back pain, bilateral sciatica, chronic neck pain, symptoms of cervical focal disc herniation, and left upper extremity radiculitis. She had a new MRI done of her cervical spine in 2015 and it was similar to the earlier study.

There is also another medical opinion in the record relating (to some degree) to Plaintiff's physical functional capacity. It comes from Dr. Miller, who performed a consultative examination on May 21, 2014. Dr. Miller noted Plaintiff's chief complaints as chronic neck and back pain. Her daily activities included cooking and child care. On examination, Plaintiff's gait was normal and she did not need help changing positions or getting up from a chair. There were some restrictions in the range of motion of her cervical and lumbar spines, but her strength and sensory examinations were normal. Dr. Miller thought Plaintiff had a fair prognosis and that she had mild to moderate limitations for repetitive lifting, bending, carrying, pushing, and pulling. (Tr. 588-

91).

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

Because Plaintiff's two assertions of error relate to how the ALJ dealt with the opinion evidence, the Court will first set forth in some detail the relevant portions of the ALJ's decision.

The ALJ gave great weight to the opinion of the consultative examiner, Dr. Miller. The ALJ reasoned that Dr. Miller was familiar with social security regulations, that she examined Plaintiff, and that her opinion was "consistent with the record as a whole, including the claimant's often noted lack of distress, normal gait, conservative treatment history, and the extent of her daily activities, suggesting the ability to perform ... light work." (Tr. 24). On the other hand, he gave little weight to Dr. Gullickson's opinion, pointing out that it did not provide a function-by-function analysis and that it was inconsistent with the record as a whole including the generally normal examination findings and her activity level. *Id*.

Plaintiff makes two separate arguments about the ALJ's reliance on the opinion of Dr. Miller and his rejection of the opinion of Dr. Gullickson. First, she contends that Dr. Miller's opinion was flawed in several respects, including the fact that Dr. Miller did not review any imaging of Plaintiff's spine, particular the August, 2014 MRI, done after Dr. Miller's examination; that Dr. Miller's examination findings, including negative straight-leg raising, were an isolated snapshot of Plaintiff's condition and inconsistent with many other examinations where that test was positive; and that Dr. Miller's ultimate conclusion of mild to moderate restrictions in a handful of activities was too vague and therefore an insufficient basis upon which to conclude that Plaintiff could do light work. Second, she argues that the ALJ should have recontacted Dr. Gullickson to get further clarification of his opinion that Plaintiff was unable to return to work, rather than simply reject his opinion as lacking specificity. She also asserts that the ALJ incorrectly relied on her activities of daily living as evidence that she was not disabled.

In response to Plaintiff's first argument concerning Dr. Miller, the Commissioner asserts that although Dr. Miller was a one-time examiner, the ALJ properly gave her opinion great weight due to its consistency with the record, which, according to the ALJ, includes many normal examination findings and a history of only conservative treatment. The Commissioner also notes that Plaintiff's ability to care for two young children is inconsistent with a claim of total disability and that the failure to review MRI reports, some of which showed only mild to moderate findings, did not undercut the validity of Dr. Miller's report. The Commissioner did not respond directly, however, to Plaintiff's argument that Dr. Miller's actual findings - that Plaintiff was mildly to moderately limited in her ability to engage in repetitive lifting, bending, carrying, pushing, and pulling - was too imprecise to permit the ALJ to formulate a residual functional capacity which addressed not only these activities but also standing, sitting, walking, climbing, crawling, kneeling, crouching, and doing overhead reaching.

Plaintiff has cited to numerous decisions of this and other courts within the Second Circuit which, according to Plaintiff, hold that the type of language used by Dr. Miller is too vague to permit an ALJ to determine accurately a claimant's residual functional capacity. So, for example, in *Meadors v. Colvin*, 2015 WL 224759 (N.D.N.Y. Jan. 15, 2015), the consultative examiners concluded that the claimant was limited in her ability to engage in prolonged sitting, standing, and walking, and that she had a mild to moderate limitation for lifting, carrying, pushing, and pulling. There, as here, the Plaintiff argued that these descriptions were too vague to allow the ALJ to rely on them in formulating a residual functional capacity. Agreeing with that argument, the court held that the examiner's use of "broad terms such as 'mild' and 'moderate' when describing Plaintiff's condition ... are too vague for an ALJ to rely on." *Id.* at *10, *citing, inter alia*, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by regulation on other grounds by* 20 C.F.R. § 404.1560(c)(2). In *Curry*, the Court of Appeals determined that an examiner's conclusion that the claimant was moderately limited in lifting and carrying and mildly limited in sitting, standing, walking, pushing, and pulling was not precise enough to allow the ALJ to determine that the claimant could do sedentary work.

This Court, however, has rejected the notion that such phraseology is always too vague and that there is a bright-line rule in such cases requiring remand. As the Court said in *Richardson v. Colvin*, 2016 WL 3179902, a*7 (W.D.N.Y. June 8, 2016), "*Curry* does not stand

for the broad proposition that a medical source opinion which uses terms like 'mild' or 'moderate' is always too vague to constitute substantial evidence. For example, courts have held that *Curry* is inapplicable, even though a medical examiner uses terms like 'mild' or 'moderate,' if the examiner conducts a thorough examination and explains the basis for the opinion." There, because the examiner detailed the examination findings and they were essentially normal, the Court held that it was not error for the ALJ to translate the ultimate opinion into the capacity to perform light work. *See also Reid v. Comm'r of Social Security*, 2019 WL 2250015 (W.D.N.Y. May 23, 2019).

It is true that in this case Dr. Miller's report explained her examination findings, which included the fact that Plaintiff appeared to be in no acute distress, that her gait was normal, that squat was 33% of normal, that her stance was normal, that she used no assistive devices, that she needed no help changing for the exam and getting on an off the examination table, and that she could rise from a chair without difficulty. Additionally, Dr. Miller noted that Plaintiff had some limitations on the flexion, rotation, and extension of her cervical spine, that the flexion and extension of her lumbar spine were similarly limited, that Plaintiff refused to do rotation and lateral flexion of her lumbar spine, that straight leg raising was negative bilaterally, and that Plaintiff also refused to do hip flexion and extension. It is perhaps worth noting that she was seven months pregnant at the time. That appears to be the type of detail that, in some cases, might save a conclusion phrased in terms of mild or moderate limitations from being too vague.

The Court concludes that in this case, however, it does not. Plaintiff consistently told her doctors and physical therapists that she had significant limitations in her ability to stand, walk, and sit - capacities which are not addressed at all in Dr. Miller's report, and capacities which are crucial to the ability to perform light work, even with a sit-stand option. As she points out, her other examinations were not all within normal limits, with straight leg raising - one of the tests relied on by Dr. Miller - producing positive results on a number of occasions. Dr. Miller was not able to test some of the functions relevant to Plaintiff's ability to sit, stand, or walk. Although her examination was fairly complete, she did not, as Plaintiff notes, have an updated MRI to review. And the opinion of the treating source, Dr. Gullickson, appears to be diametrically opposed to hers, even though it also lacks specificity. But Dr. Gullickson did say that for at least a year Plaintiff could not return to work even though her job at that time was sedentary. It is also significant to note that Dr. Gullickson prescribed and renewed a handicapped parking pass, indicating limitations on standing and walking which may be incompatible with the demands of light work. These considerations considerably weaken the reliability of Dr. Miller's opinion and strengthen the argument that its admitted vagueness is not salvaged by the results of her examination.

In a similar case, *Jackson v. Berryhill*, 2019 WL 4593648 (S.D.N.Y. Sept. 23, 2019), the court considered whether a consultative examiner's finding that the claimant had limitations on her ability to lift and carry could support findings about how long she could sit, stand, and walk. In concluding that they could not, the court relied on the following factors: that sitting limitations, not addressed by the consultative examiner, were a key factor in the disability claim; that the examiner did not attempt to explain how her findings affected the Plaintiff's ability to sit, stand, or walk; and that her examination preceded significant medical evidence which, of course, she was unable to consider. That conclusion was reached despite the fact that the examiner performed,

and recounted, a detailed examination of the claimant and found few abnormalities, similar to what occurred here.

The *Jackson* court determined that it was error for the ALJ, faced with the absence of any other helpful medical opinions, not to recontact the consultative examiner to obtain further definition of the claimant's functional abilities. Here, the ALJ could have contacted either Dr. Miller or Dr. Gullickson for clarification, or another consultative examination could have been ordered. In the absence of more definitive opinions, however, it was error for the ALJ to formulate a residual functional capacity for this Plaintiff based only on the record and the imprecise conclusions of the consultative examiner. For that reason, the case will be remanded to the Commissioner for further proceedings.

## V. CONCLUSION AND ORDER

For the following reasons, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings, (Doc. 7), **DENIES** the Commissioner's motion (Doc. 12), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**